Eastern District of Kentucky
**FILED**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

**AUG 0 7 2006**

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

CIVIL ACTION NO. 05-320-KSF

CASSIE ROYCE                                                                     PLAINTIFF

V.                              **OPINION & ORDER**

LEXINGTON-FAYETTE COUNTY
DEPARTMENT OF HEALTH                                                  DEFENDANT

\* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on the defendant's motion for summary judgment [DE

#22].

## I.   **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Cassie Royse was employed by the Lexington-Fayette County Health

Department (the "Health Department") as a nurse in departments relating primarily to women's

health[1] from 1980 until March 31, 2000, when she resigned. At the time she resigned, the

plaintiff was working in Field Services in the Community Nursing Division, making home visits

to pre-natal and post-partum patients, where she was expected to make an average of three visits,

or "encounters," per day.

During much of her employment with the Health Department, the plaintiff received

positive performance evaluations and promotions. However, sometime in 1998, the plaintiff

---

[1]      The plaintiff served as "team leader" in the Maternity Program; a "team leader" in
Family Planning; Administrator of the Maternal/Child Health Program; Coordinator of the
Breast/Cervical Cancer Program; School Health; and Field Services, where she had worked since
1995.

began to have problems with productivity, and the quantity of her work decreased dramatically.[2]
In early January of 2000, the plaintiff met with Health Department managers to discuss her poor
job performance.  During these meetings, the managers outlined the problems with plaintiff's
performance, provided performance standards they expected the plaintiff to meet in the future,
and warned her that failure to meet these standards might result in dismissal.  They also informed
the plaintiff that, based on her comments that she was "physically and mentally exhausted" and
experiencing "job burn out," she should consider taking leave under the Family and Medical
Leave Act ("FMLA").

Ultimately, the plaintiff decided to take FMLA leave and notified the defendant by letter
dated January 18, 2000.  She provided a "Health Provider Certification" to the defendant, as
required, from Dr. Tonya Claytor, the plaintiff's physician, who stated therein that the plaintiff
experienced "fatigue, insomnia, anxiety related to work stress" and that she complained of
"tiredness, appears tired & depressed somewhat."  The certification also noted that Dr. Claytor
had referred the plaintiff to a clinical psychologist, Dr. Harwell Smith, whom the plaintiff began
seeing on January 24, 2000.  Dr. Smith thereafter submitted a second Health Provider
Certification dated January 28, 2000, at the defendant's request, noting that the plaintiff had had
a "depressed mood" for more than a year, that she was being seen by him twice weekly, and that
she "must not work or concern self with work issues."

---

[2]       For example, in the last six months of 1998, the plaintiff made an average of 16.5
encounters per month, as opposed to the expected 55 per month.  In the last six months of 1999,
which was immediately after the plaintiff's father had passed away, the plaintiff made an average
of 18.83 encounters per month.  This was less then half the number of encounters logged by other
full-time employees in the same position at the Health Department.

Thereafter, the defendant determined that the plaintiff was eligible for FMLA leave. While the plaintiff was on leave, the defendant apparently discovered a number of additional issues with the plaintiff's performance, such as 29 files in a "holding file" that had not been charted, additional encounters that had been assigned but not made, etc. Although she was entitled to twelve weeks of leave under the FMLA, the plaintiff returned to work after eight weeks on March 1, 2000. Apparently no one at the Health Department asked the plaintiff about her medical condition and she did not volunteer any information other than to say she was ready to go back to work and that she would meet program expectations. She further did not ask for any type of accommodation.

The first month back, the plaintiff's productivity improved, but was still below the standard set by the defendant. By letter dated March 15, 2000, the plaintiff voluntarily resigned her position and requested to be on "stand-by," which would permit her to remain an employee of the Health Department so that if a position came open, she would be considered "in-house" and therefore given priority over outside applicants.

A few months later in July of 2000, the plaintiff began applying for open positions with the Health Department. Assuming that she was on stand-by, the plaintiff submitted an "Employee's Position Bid and Request" form for the position. However, the plaintiff then learned from Joan Bishop that she was not considered a "stand-by" employee.

A hiring committee ultimately determined that the plaintiff should be hired for an open "Breast/Cervical Cancer" position, the plaintiff having been the only applicant. Upon forwarding the recommendation to the Human Resources department, Joan Bishop noted that the hiring committee had not reviewed the plaintiff's personnel record, which documented her prior

performance problems.  According to the defendant, after reviewing the personnel record and holding additional meetings to discuss the plaintiff's performance at the time of her resignation, the hiring committee determined that the plaintiff should not be hired because of previous, unresolved performance issues.  The position was ultimately filled by another applicant after additional advertising.[3]

The plaintiff paints a different picture.  She asserts that the hiring committee had, in fact, considered her references before making its initial hiring decision, all of which were very positive and indicated that the persons giving the references would have hired the plaintiff again "in the right job."  She further claims that the hiring panel knew at the time it made its initial recommendation to hire the plaintiff that she had had some productivity problems in the past, knew that the plaintiff had had some mental health problems, but did not want this to ruin the plaintiff's career, and decided to offer her the position anyway.  The opinion of Regina Allen (the hiring supervisor for the Breast/Cervical Cancer position) was that the plaintiff was a good nurse, was well qualified, and could do the job.  She testified that she felt pressured at the meeting with Joan Bishop and Deputy Commissioner Charles Gorton to change her decision to hire the plaintiff and thought that she would be subject to discipline if she did not.  The plaintiff also points to another employee's testimony that this is the only time a hiring committee's decision was not approved by the Deputy Commissioner.

The defendant sent a rejection letter to the plaintiff on November 17, 2000, indicating that she had not been chosen for the position "due to unresolved performance issues at the time of

---

[3]      In November of 2001, the plaintiff applied for another position with the Health Department, but was not considered eligible due, again, to the unresolved performance issues at the time of her resignation.

[her] resignation." Thereafter, she met with Charles Gorton, who, according to the plaintiff, indicated that he knew that she had had major depression while working at the Health Department. He suggested that she work somewhere else and establish a better track record to show she could work. The plaintiff asked Gorton to give her that opportunity, but he declined.

The plaintiff then filed suit in Fayette County Circuit Court, bringing a state law claim for disability discrimination under the Kentucky Civil Rights Act ("KCRA"), KRS Chapter 344. She later amended her complaint to bring a state law claim for age discrimination under the KCRA, as well as a claim for violation of the FMLA, 29 U.S.C. § 2601 et seq. Thereafter, the defendant removed the matter to this Court.

## II.    MOTION FOR SUMMARY JUDGMENT

### A.    The Parties' Positions

The defendant has moved for summary judgment on all counts. As to the disability discrimination claim, the defendant argues that the plaintiff cannot establish that she is a "qualified individual with a disability." Regarding any failure to accommodate, the defendant argues there is no evidence that the Health Department knew or suspected that the plaintiff had any mental or physical limitations as of late 1998 or summer of 1999. Her failure to rehire claim fails because she admits that the reason she was not rehired was because of previous performance issues. Regarding the age discrimination and FMLA claims, the plaintiff has presented no evidence of any age discrimination by anyone at the Health Department and no evidence that her medical leave was a factor in the decision not to re-hire her at the later dates.

The plaintiff responds that the evidence is clear that she had an actual disability – major depression – that had lasted for at least 18 months, is of a recurrent nature, and which

-5-

substantially limited a number of major life activities.  She also had a record of a disability and was regarded as such by the Health Department.  The plaintiff also argues that she has sufficient proof of her pre-resignation failure to accommodate claim, her post-resignation failure to accommodate claim, as well as her failure to rehire claim.

With respect to age discrimination, the plaintiff points out that the applicants hired in the positions that she applied for were both younger than her and that there is sufficient evidence of pretext.  Regarding the FMLA claim, the plaintiff argues that there is sufficient proof that she was not rehired because she had taken FMLA leave, based on the temporal proximity of the two events.

**B.**     **Standard**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' "  Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)).  The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Once the moving party shows that there is an absence of evidence to support the

nonmoving party's case, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." Moore v. Phillip Morris Companies, Inc., 8 F.3d 335, 340 (6th Cir. 1993). Conclusory allegations are not enough to allow a nonmoving party to withstand a motion for summary judgment. Id. at 343. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." Anderson v. Liberty Lobby, Inc., 477 U.S. at 252. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (citations omitted).

### C.   **FMLA Claim**

The Court will consider the federal claim first, since a successful defense motion on this claim may lead the Court, in its discretion, to decline to exercise supplemental jurisdiction over the state law claims.

The plaintiff makes two allegations with respect to her FMLA claim. The first is that the Health Department violated the FMLA by refusing to restore her to an equivalent position with equivalent benefits, pay, and other terms and conditions of employment, upon her return from leave. Second, the plaintiff alleges that the Health Department violated the FMLA by considering her FMLA leave as a factor in whether to hire her for the Breast/Cervical Cancer position or any other positions.

According to the Court of Appeals for the Sixth Circuit,

> [a]n eligible employee who takes FMLA leave is entitled, on return from such leave, "to be restored by the employer to the position of employment held by the

-7-

employee when the leave commenced" or "to be restored to an equivalent position
with equivalent employment benefits, pay, and other terms and conditions of
employment." *Id.* § 2614(a)(1). In addition to providing substantive rights to
leave and reinstatement, the FMLA makes it unlawful for an employer "to
interfere with, restrain, or deny the exercise of or the attempt to exercise, any right
provided under" the FMLA. *Id.* § 2615(a)(1). The FMLA also prohibits
retaliation and discrimination against employees for opposing unlawful practices
under the FMLA or for filing an FMLA charge or participating in a proceeding or
inquiry related to the FMLA. *Id.* § 2615(a)(2), (b).

Moorer v. Baptist Mem. Health Care Sys., 398 F.3d 469, 486-87 (6th Cir. 2005). With respect to

the plaintiff's first allegation, there is no evidence in the record that the defendant refused to

restore her to an equivalent position with equivalent benefits. The plaintiff herself admitted that

she was restored to her identical position after returning from FMLA leave and does not dispute

this in her response brief. Therefore, the Court will grant summary judgment to the defendant on

this part of the plaintiff's FMLA claim.

The plaintiff also claims that the fact that she took FMLA leave was a factor in the Health

Department's refusal to consider her for any position after she had resigned and then tried to

obtain employment again with the Health Department. In order to prove a claim of FMLA

retaliation or discrimination[4] under 29 U.S.C. § 2615(a)(2), the plaintiff must show the

following:

In order to establish an FMLA discrimination claim, [the plaintiff] must

---

[4]     The plaintiff states in her complaint that the defendant "caus[ed] interference with
her rights under FMLA" when it considered her prior FMLA leave as a factor in withdrawing her
name from consideration of further employment positions. However, the plaintiff is not alleging
that the defendant's "interfered" with her taking FMLA leave – the evidence indicates that the
defendant suggested to the plaintiff that she take the leave and encouraged her to do so. Rather,
she alleges that the defendant later retaliated or discriminated against her for having taken the
leave. Thus, the Court considers her claim as one for FMLA retaliation or discrimination under
29 U.S.C. § 2615(a)(2), as opposed to an "interference" claim under 29 U.S.C. §2615(a)(1).

demonstrate that: (1) she was engaged in an activity protected by the FMLA; (2) the employer knew that she was exercising her rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action. *Arban v. West Publ'g Corp.*, 345 F.3d 390, 404 (6th Cir. 2003). [The plaintiff] bears the burden of demonstrating a causal connection. *Id.* She must show that the employer's stated reason for terminating her was pretextual and that the true reason for her dismissal was her medical leave. *Id.*

Killian v. Yorozu Automotive Tennessee, Inc., ___ F.3d ___, 2006 WL 2009034 (6th Cir. July 20, 2006). In the present case, there is no evidence of a causal connection between the Health Department's failure to re-hire the plaintiff and her having taken FMLA leave. There is simply no evidence in the record to suggest that the plaintiff's FMLA leave was a consideration at all in not re-hiring the plaintiff. The evidence is clear that the plaintiff was not re-hired because of her low productivity in her previous positions. The plaintiff's own testimony affirms this conclusion. She testified that it was her opinion that the Health Department refused to re-hire not because she took FMLA leave, but because of "what the leave was for" (depression) and because of "what the major depression caused" in the way of performance issues. Based on the record, the Court finds that the plaintiff cannot prove that the Health Department's stated reason for refusing to consider her for re-employment – her unresolved performance issues – was a pretext and that the true reason for not re-hiring her was because she had taken FMLA leave.

The plaintiff relies on the district court decision of Schaller v. Donelson Air Conditioning Co., 2005 WL 1868769 (M.D. Tenn. Aug. 4, 2005), arguing that a close temporal connection between the taking of FMLA leave and the adverse employment decision alone is sufficient evidence to take her FMLA claim to a jury. The Schaller court's interpretation notwithstanding, the Sixth Circuit has clearly rejected the argument that temporal proximity, in and of itself, is

sufficient to establish a causal connection. Skrjanc v. Great Lakes Power Service Co., 272 F.3d 309, 317 (6th Cir. 2001) (proximity alone may not survive summary judgment); Nguyen v. City of Cleveland, 229 F.3d 559, 566-67 (6th Cir. 2000) (same). In the present case, the plaintiff took her FMLA leave in January of 2000 and the Health Department made its decision in October of 2000 not to offer the plaintiff the Breast/Cervical Cancer position. Therefore, even if proximity alone *is* sufficient evidence of causation, ten months' time would not support a reasonable inference of causation. See, e.g., Joostberns v. United Parcel Service, Inc., 2006 WL 41189 (6th Cir. Jan. 9, 2006) (temporal proximity was two months); Skrjanc, 272 F.3d at 309 (one month); Nguyen, 229 F.3d at 559 (one month); Cooper v. City of North Olmsted, 795 F.2d 1265 (6th Cir. 1986) (four months). The following statement by the Sixth Circuit is particularly appropriate in this case:

> A time lag of seven months does not necessarily support an inference of a causal link; previous cases that have permitted a prima facie case to be made based on the proximity of time have all been short periods of time, usually less than six months.

Parnell v. West, 114 F.3d 1188, 1997 WL 271751 at *3 & n.1 (6th Cir. May 21, 1997) (unpublished decision) (citing cases). Based on the above, the Court will grant summary judgment to the defendant on the plaintiff's FMLA claim in its entirety.

## III.   CONCLUSION

The plaintiff's remaining claims were brought under the Kentucky Civil Rights Act. The supplemental jurisdiction statute, 28 U.S.C. § 1367, explicitly allows a trial court to dismiss

pendent state law claims where all federal claims have been dismissed.[5] Moreover, this Court has engaged in a consideration of "the interests of judicial economy and the avoidance of multiplicity of litigation and [has] balance[d] these interests against needlessly deciding state law issues" and concludes that dismissal of the plaintiff's state law claims is warranted. Landefeld v. Marion Gen. Hosp., Inc., 994 F.2d 1178, 1182 (6th Cir. 1993).

The Sixth Circuit has repeatedly held that as a general matter where the federal claims are dismissed before trial, pendent state claims should be dismissed as well. Id.; see also Estate of Brouhard By and Through Brouhard v. Village of Oxford, 990 F. Supp.839, 843-44 (E.D. Mich. 1997) (citing cases). Discovery has been completed in this case and there is no reason to think that much will be required of the state court other than to decide the present motion with respect to the remaining state law issues. Further, the plaintiff's claims are primarily and substantially state law claims and the federal claim was added as an additional count. In the present case, multiplicity of litigation is not an issue and this Court can avoid needlessly deciding state law issues by way of remand. Therefore, the Court will, in its discretion, remand the remaining state law claims to the Fayette County Circuit Court for decision.

Accordingly, the Court, being otherwise fully and sufficiently advised, HEREBY ORDERS that

---

[5]     This section states in part that:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if– . . . the district court has dismissed all claims over which it has original jurisdiction . . . .

28 U.S.C. § 1367(c)(3).

(1)     defendant's motion for summary judgment [DE #22]is GRANTED
        with respect to the plaintiff's federal FMLA claim, which is
        DISMISSED WITH PREJUDICE;

(2)     this matter is REMANDED to the Fayette County, Kentucky,
        Circuit Court for consideration of the remaining state law claims;

(3)     all outstanding motions are DENIED WITHOUT PREJUDICE to
        refile same in state court;

(4)     this matter is STRICKEN from the active docket of the Court; and

(5)     this is a final and appealable Order and no just cause for delay exists.

This _____ day of August, 2006.

                                   KARL S. FORESTER, SENIOR JUDGE

-12-